# United States Court of Appeals
## For the Eighth Circuit

_____

No. 25-1318

_____

Equal Employment Opportunity Commission

*Plaintiff - Appellant*

Bryan Banks

*Intervenor*

v.

Sun Chemical Corporation

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: January 14, 2026
Filed: August 4, 2026
[Published]

_____

Before SHEPHERD, KELLY, and STRAS, Circuit Judges.

_____

PER CURIAM.

The Equal Employment Opportunity Commission believes the jury instructions did not cover its theory of workplace discrimination. Whether they did or not, the evidence did not support it, so we affirm.

I.

Bryan Banks and Ricardo Nevarez did not get along. Both were technicians at Sun Chemical Corporation, a manufacturer of inks, colorants, and coatings.

At first, Nevarez trained Banks. But over time, their relationship deteriorated to the point that Nevarez stopped looking Banks in the eye or speaking to him. As Nevarez tells it, the relationship soured because Banks repeatedly questioned his work ethic, including by suggesting he lied about his son's death to get time off. Banks, on the other hand, thought Nevarez was prejudiced based on an earlier incident in which he had reportedly called the plant's only other black employee the N-word.

Their frayed relationship eventually reached a breaking point. One morning, someone asked, "[w]here's [Nevarez]?" Within earshot of the comment, he burst into the room to yell at Banks for questioning his work ethic again. Banks eventually walked away, but not before they stood toe-to-toe and traded expletives.

Still angry, Nevarez followed Banks to his locker. As Banks bent down, Nevarez punched it so hard it left a dent. Another exchange of insults followed. As Banks walked away again, Nevarez screamed that he was a "fucking [N-word]" three times.

Later that morning, Banks reported the incident to a manager. The company suspended Nevarez for five days without pay and informed him that future incidents

would lead to more discipline, up to and including termination. For his use of profanity, Banks received a written warning.

Dissatisfied with the outcome, Banks filed a charge of discrimination with the EEOC. After attempts at reaching an agreement failed, the agency sued the company in federal district court for violating Title VII of the Civil Rights Act of 1964. *See* 42 U.S.C. § 2000e-5(f)(1) (explaining that if a "conciliation agreement" cannot be reached, "the Commission may bring a civil action" and the "person or persons aggrieved shall have the right to intervene"). Together with Banks, who intervened, they argued that Sun Chemical went too easy on Nevarez both times he used the slur. *See id.* § 2000e-2(a)(1) (making it illegal "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race").

The hostile-work-environment claim made it to a jury, but only because the district court[1] denied a directed verdict out of "an abundance of caution." It said at the time that it did not "know how a jury could find for" the EEOC and Banks. The court's prediction turned out to be true: the jury concluded that Sun Chemical did not discriminate against Banks.

## II.

The EEOC believes the jury was misled by flawed jury instructions that did not cover its theory that Sun Chemical could have prevented the harassment. According to the instructions, liability depended on whether it proved, among other things, that the company "knew or should have known of the harassing conduct" and "failed to take prompt and appropriate corrective action to end the harassment." The alleged problem was that they focused exclusively on whether Sun Chemical adequately *responded* to Banks's harassment, not whether it had failed to *prevent* it

---

[1]The Honorable Roseann A. Ketchmark, United States District Judge for the Western District of Missouri.

in the first place. *See Vance v. Ball State Univ.*, 570 U.S. 421, 448–49 (2013) (explaining that "a plaintiff could . . . prevail by showing that his or her employer was negligent in failing to prevent harassment from taking place"). And then a supplemental instruction that referred to "[p]roper remedial action" only added to the confusion.

We need not decide whether the instructions adequately reflected the EEOC's failure-to-prevent-harassment theory because the evidence did not support one, at least under our precedent. *See Lincoln Composites, Inc. v. Firetrace USA, LLC*, 825 F.3d 453, 463 (8th Cir. 2016) (explaining that the district court is "not required to instruct on issues that do not find support in the record" (citation omitted)). To be liable, Sun Chemical had to (1) have actual or constructive knowledge of "ongoing" harassment by Nevarez, and (2) decline to take "remedial action reasonably calculated to stop [it]." *Sellars v. CRST Expedited, Inc.*, 13 F.4th 681, 697, 700 (8th Cir. 2021) (citation omitted). The district court was right to be skeptical that a reasonable jury could side with the EEOC.

Start with the first element. At *most*, the record shows that Sun Chemical *may* have known of a single past incident involving Nevarez, not any "ongoing" racial harassment. *Id.* at 700; *see Engel v. Rapid City Sch. Dist.*, 506 F.3d 1118, 1124 (8th Cir. 2007) (noting that "a single harassing act might not be actionable standing alone"). He used the N-word once toward another black employee, but nothing about that incident would have placed the company on notice that he was a "known serial harasser." *Sellars*, 13 F.4th at 700; *cf. Engel*, 506 F.3d at 1124–25 (reversing a grant of summary judgment to an employer who knew that a harasser had "continued certain elements of the harassment").

The second element also presented an obstacle for the EEOC's theory. Sun Chemical took "preventative remedial action" shortly after the first incident occurred. *Sellars*, 13 F.4th at 698. It sent a written "disciplinary action" to Nevarez asking him to "take a step back and begin to think about what you are about to say and the consequences that may follow." The response could have been stronger, but

-4-

it reflected Navarez's more than three decades of service without a history of harassment. *See Engel*, 506 F.3d at 1125 (explaining that "the law does not require an employer to fire a . . . harasser in the first instance to demonstrate an adequate remedial response"); *cf. Sellars*, 13 F.4th at 699 (stating that "employers may be required to *escalate* their response to *repeated* harassment" (emphases added)).

To be sure, the EEOC claims that Nevarez also used the N-word in occasional workplace conversations. What is missing, however, is evidence that Sun Chemical had "actual or constructive notice of [that] conduct." *Sellars*, 13 F.4th at 697. As the EEOC admits, no one reported it, so there was not "enough information to raise a probability of . . . harassment in the mind of a reasonable employer." *Sandoval v. Am. Bldg. Maint. Indus., Inc.*, 578 F.3d 787, 802 (8th Cir. 2009) (quoting *Kunin v. Sears Roebuck & Co.*, 175 F.3d 289, 294 (3d Cir. 1999)). Nor were a few offhand uses of the slur, unacceptable as they are, "so severe and pervasive that management reasonably should have known of [them]." *Id.* (quoting *Watson v. Blue Circle, Inc.*, 324 F.3d 1252, 1259 (11th Cir. 2003)) (defining constructive notice in the Title VII context).

## III.

We accordingly affirm the judgment of the district court.

_____